UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(CAMDEN VICINAGE)

**WEISBERG LAW, P.C.**
MATTHEW B. WEISBERG
7 SOUTH MORTON AVE.
MORTON, PA  19070
610-690-0801

| | |
|---|---|
| Jeri Rizzo : | |
| 7 Davis Drive : | |
| Bridgeton, NJ 08302 : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| DeMarco REI, Inc. : | |
| Two Penn Center, Suite 222 : | |
| 1500 JFK Blvd. : | |
| Philadelphia PA 19102 : | |
| : | |
| And : | |
| : | |
| Lori Palka : | CIVIL ACTION NO.: 09-01453 |
| 8512 Trumbauer Dr. : | |
| Glenside, PA 19038 : | JURY OF TWELVE (12) JURORS DEMANDED |
| : | |
| : | |
| And : | |
| : | |
| Garden State Land Title, LLC : | |
| 9 E. Stow Road, Suite C : | |
| Marlton, NJ 08053 : | |
| : | |
| : | |
| And : | |
| : | |
| Flagstar Bank, FSB : | |
| 5151 Corporate Drive : | |
| Troy, MI 48098 : | |
| : | |
| And : | |
| : | |
| John Does, 1-10 : | |
| Defendants. : | |

1

## SECOND AMENDED CIVIL ACTION COMPLAINT

### I. Preliminary Statement

1. This is an action for an award of attorney's fees and costs, compensatory, statutory, treble and punitive damages, also seeking equitable, injunctive and other relief, for Defendants' "Foreclosure Rescue Scam," deed conversion, unfair or deceptive acts and practices ("UDAP"), conspiracy and/or aiding and abetting same.

### II. Jurisdiction and Venue

2. Jurisdiction in this Honorable Court is based on federal question conferred by 28 U.S.C. §1331; supplemental jurisdiction over state law claims is granted by 28 U.S.C. §1367.

3. Venue lies in this District in that the events giving rise to this claim occurred here, at least one (1) Defendant resides, maintains a principle place of business, and/or does business here, and/or the subject of this action is situated within this district.

### III. Parties

4. Plaintiff, Jeri Rizzo ("Plaintiff"), is an adult individual, currently residing and/or at all times material were residing at the above-captioned address ("Premises").

5. Defendant, DeMarco REI, Inc. ("DeMarco"), is a duly incorporated corporation under and by virtue of the laws of the Commonwealth of Pennsylvania, maintaining a principle place of business at the above captioned address.

6. Defendant, Lori Palka ("Palka"), is an adult individual and citizen believed residing at the above captioned address.

7. Defendant, Garden State Land Title, LLC ("Title Company") is a duly incorporated limited liability company under and by virtue of the laws of the State of New Jersey, maintaining a principle place of business at the above captioned address.

8. Defendant, Flagstar Bank, FBS ("Flagstar"), is a duly incorporated entity under and by virtue of the laws of the State of Michigan, maintaining a principle place of business at the above captioned address, at all times material acting as Plaintiff's implied lender.

9. Defendants, John Does 1-10, is a moniker for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom.  Each of these parties are incorporated as Defendants in each and every Count and averment listed above and below.

**IV.  Operative Facts**

    A.  <u>Background</u>

10. Plaintiff is a single mother raising three children, all living in the premises.

11. In or around January 2008, Plaintiff was dismissed from her Chapter 13 Bankruptcy, (which case was later reinstated in or around May 27, 2008).  Bankr.D.N.J. 05-36373.

12. Despite being employed, Plaintiff had fallen behind in the bankruptcy plan payments due to her not receiving (delinquent) child support payments.

13. At or around that time, Plaintiff was contacted by an individual, Defendant, John Doe, believed named Joe, an employee of Defendant, DeMarco, about helping Plaintiff keep her home and fix her credit so to avoid its ultimate loss due to her default via a foreclosure bailout loan brokered by DeMarco.

    B.  <u>The Setup</u>

14. Joe advised Plaintiff that he had gotten her name from J.P Morgan Chase ("Chase") (non-party), Plaintiff's then Mortgage Company.

15. Upon information and belief, Joe stated that he had received her (and her ex-husband's-see below) information from Chase to make Plaintiff believe that DeMarco and Chase were somehow related or that Chase approved of DeMarco's actions as a means to authenticate DeMarco's offer.

16. Joe advised Plaintiff that, for a fee of approximately $8,000.00 to $10,000.00, DeMarco would repair Plaintiff's credit and help her stay in her home via a form of foreclosure bailout refinance loan.

17. Plaintiff initially declined DeMarco's offer.

18. Approximately one week later, Plaintiff received a phone call from her ex-husband, Frank Gottardi (non-party) ("Gottardi"), stating that he had received the same phone call from Joe.

19. At all times material, Gottardi and Plaintiff were both named on the title to the Premises.

20. While speaking to Gottardi, Joe, again, stated that he had received Plaintiff's and Gottardi's information from Chase.

21. Plaintiff relented to Demarco's solicitation.

    C.    <u>The Pitch</u>

22. On or about January 14, 2008, Joe came to Plaintiff's home with his supervisor, Defendant, John Doe, believed named Mike, another employee of Defendant, DeMarco, to discuss Plaintiff's monthly payments and the amount of her debts vis-à-vis this foreclosure rescue loan.

23. Plaintiff advised Mike that the most she could make in monthly payments was $1,400.00 and that her debt totaled approximately $40,000.00.

24. On or about January 28, 2008, Defendant, John Doe, an appraiser, valued Plaintiff's home at approximately $210,000.00.

25. Upon information and belief, the appraiser acted at the direction of DeMarco to over-appraise the value of the premises.

26. Gottardi refused to participate (sign any paperwork or attend closing) as he was not interested in taking out a new loan on the premises.

27. Joe advised Plaintiff that Gottardi's presence was not necessary; DeMarco would instead provide just Plaintiff with the loan.

28. In or around March 28, 2008, DeMarco informed Plaintiff that her new monthly payments would be $1,700.00.

29. Plaintiff informed Mike that the payments were too high and unaffordable; Plaintiff would not agree to that amount as she knew she would not be able to long-term afford it.

30. Mike agreed to lower the payments to $1,400.00 in exchange for DeMarco instead only providing $20,000.00 to partially pay off Plaintiff's debts.

31. Plaintiff agreed to those terms as it allowed Plaintiff to save her home from Chase's impending Sheriff's foreclosure Sale.

    D.    The Closing

32. On or about April 10, 2008, Mike came to Plaintiff's home for the closing.

33. The paperwork that Mike brought with him indicated the originally discussed $1,700.00 payment obligation, directly contradicting the amount Plaintiff had agreed to and Mike had promised ($1,400).

34.     As time was of the essence per the imminent foreclosure sale, Mike informed Plaintiff that she should sign the documents as they were and that he would change the terms to $1,400.00 when he got back to his office.

35.     Plaintiff was reluctant to sign those documents but Mike coerced Plaintiff to sign using the imminent foreclosure by Chase as duress.

36.     Garden State and DeMarco intentionally withheld from Plaintiff copies of the loan paperwork at closing under the guise of Mike stating that he needed all the documents in order to change the monthly payment amount to the proper amount of $1,400.00.

37.     Mike took all the paperwork with him and told Plaintiff that he would overnight the corrected paperwork to Plaintiff, which she never received.

38.     When Plaintiff did not receive the paperwork, she called DeMarco and spoke with Joe.

39.     Joe informed Plaintiff that Mike did not change the paperwork to reflect $1,400.00 but rather that the "correct" figure was $1,700.00.

40.     Plaintiff disputed this and demanded a copy of the paperwork, to no avail.

41.     To date, neither DeMarco, Garden State nor Flagstar has ever sent closing nor loan paperwork to Plaintiff despite repeated requests.

42.     Plaintiff does not have any paperwork from her loan.

       E.     <u>The Aftermath</u>

43.     After the closing, Plaintiff began to receive strange demands for rent from DeMarco.

44.     There was no intended rental agreement with DeMarco; plaintiff did not intend to sell her home.

45.     However, Plaintiff later discovered that Garden State, at the behest of DeMarco, fraudulently conveyed title to Palka without plaintiff's permission.

  F. <u>Discoveries</u>

47. On or about June 20, 2008, Plaintiff learned of her "sale" through an announcement in a local newspaper which stated that Plaintiff's property had been sold to Palka on or around April 14, 2008.

48. Upon information and belief, Plaintiff discovered that Title Company, Palka and Demarco coordinated a scheme whereby DeMarco solicited Plaintiff not for a mortgage foreclosure bailout via refinance but ultimately rather a "sale lease-back" of Plaintiff's premises to Palka, all concealed from Plaintiff:

  a. Palka is believed to be an "investor" of DeMarco's;

  b. DeMarco brokered the purchase loan between Palka and Flagstar;

  c. Garden State coordinated and attended the closing whereat Garden State allowed DeMarco to use Palka's identity to execute the purchase loan to effectuate the sale of Plaintiff's premises to Palka;

  d. Upon information and belief, Garden State disbursed re split, as was agreed between defendants but concealed from Plaintiff, the proceeds from the closing derived from the Flagstar loan to:

    (i) itself via inflated (purchase and not refinance) title insurance and endorsements premiums, along with related closing fees (such as courier, wire, document preparation, notary, etc) which were not incurred and were not customary;

    (ii) Flagstar via pre-paid finance charges;

    (iii) DeMarco and Palka via the difference between the Flagstar purchase amount and the Chase pay-off (equity); and

      (iv) DeMarco via the Yield Spread Premium (difference between the available interest rate and ultimate closing rate reduced to a monetary sum in the form of a commission).

  e.  Additionally, Palka and DeMarco would profit in sharing the anticipated rents from plaintiff (wherein Plaintiff was intended by Defendants to rent the premises ultimately towards repurchase);

49.  The Flagstar mortgage is, in fact, plaintiff's refinance mortgage; Plaintiff is the implied borrower of Palka's purchase loan made by Flagstar through Title Agency brokered by DeMarco wherein the loan refinanced and paid of Plaintiff's debt, plaintiff retained all indicia of homeownership, and Plaintiff funded by her equity Defendants' internal and concealed split of the loan proceeds.

50.  As otherwise required, Flagstar through Garden State failed to provide Plaintiff with the loan documentation furthering the concealed deed, equity and settlement proceeds conversion.

51.  At all times, Defendant, DeMarco, acted with full authority as an agent of co-Defendants with co-Defendants' actual if not constructive knowledge towards the aforesaid joint venture.

52.  DeMarco was an agent of Defendants pursuant to, upon information and belief, an oral agreement between the parties;

53.  At all times, DeMarco acted as an agent of Flagstar with implied authority to do all that is proper, usual, necessary, customary or routine in the exercise the express authority granted to DeMarco by Flagstar, such as DeMarco brokering the "sale lease-back" between Plaintiff and Palka and subject Loan between Palka and Flagstar.  In the alternative, DeMarco acted with the apparent authority of Flagstar-Plaintiff believed DeMarco was, at all times, through its employees, speaking on behalf and in control of Flagstar vis-à-vis the Loan, which was to be a

refinance not purchase mortgage. In the sur-alternative, Flagstar made DeMarco its agent by estoppel, by leading Plaintiff to believe DeMarco was Flagstar's Agent by communicating exclusively through DeMarco, or by ratification, by knowing yet failing to denounce DeMarco's misconduct and, in fact, benefitting thereby.

    G.    <u>Foreclosure</u>

54. In or around, April 2009, defendant, Flagstar, though Mortgage Electronic Registration Systems, Inc ("MERS") (non-party), instituted foreclosure against Plaintiff's property arising from Palka's alleged loan default.

    G.    <u>Damages</u>

55. As a result of the foregoing, Plaintiff has suffered injuries including, but not limited to: (1) pain and suffering, including emotional distress and embarrassment; (2) damage to credit rating and/or credit defamation; (3) financial loss(es), including lost opportunity(ies) and/or equity; (4) loss and/or possible loss of the premises; (5) attorneys fees and court costs; and/or (6) such other and further injuries as will be determined in discovery and/or at trial, including aggravation of a pre-existing condition(s).

    **V.**    **Causes of Action**

56. Plaintiff is a natural person provided with the right to defer payment of debts or to incur payment of debt and defer payment, and the credit offered or extended was primarily for personal, family and/or household purposes.

57. As a matter of law, Plaintiff and Defendants are "persons."

58. Defendants regularly extend consumer credit, six (6) or more loans per year, two (2) or more high cost mortgages per year, and/or one (1) or more of such high cost mortgages through a broker.

59.     This loan was a federally related mortgage loan, made by a federally-insured depository lender, is HUD-related, and/or was intended to be sold on the secondary market or to creditors who make or invest more than one million dollars a year in residentially secured loans.

### COUNT I
**Truth-in-Lending Act ("TILA")/Home Ownership and Equity Protection Act ("HOEPA")**
*Flagstar*

60.     At all times material, Defendants, in the ordinary course of business, extended and/or arranged for the extension of consumer credit and/or offered to extend or arrange for the extension of such credit.

61.     The Loan was a residential refinance mortgage loan subject to Plaintiff's right of rescission, recoupment, statutory and/or actual damages described by 15 U.S.C. §1635 and 12 C.F.R. §226.23.

62.     In said loan transaction, Plaintiff did not receive the disclosures required by the Truth-In-Lending Act ("TILA"), 15 U.S.C. §1601, et. seq., and Regulation Z of the Federal Reserve Board ("Regulation Z"), 12 C.F.R §226.1 et seq.

63.     Defendants failed to deliver all "material" disclosures required by TILA and Regulation Z, including but not limited to:

    (a) Failing to properly and accurately disclose the "amount financed," described in and in violation of Regulation Z §226.18(b) and 15 U.S.C. §1638(a)(2)(A);

    (b) Failing to clearly and accurately disclose the "finance charge," described in and in violation of Regulation Z §226.4 and 15 U.S.C. §1638(a)(3);

    (c) Failing to clearly and accurately disclose the "annual percentage rate," described in and in violation of Regular Z §226.18(e) and 15 U.S.C. §1638(a)(4);

      (d) Failing to comply with the special disclosure requirements of Regulation Z §226.32;

      (e) Failing to timely provide Plaintiff with two (2) copies of a Notice of her Right to Rescind the Transaction and/or one (1) copy each of the form Disclosure pursuant to TILA and/or HOEPA.

64. Due to the violations of TILA and Regulation Z, Plaintiff has an ongoing right to rescind the transaction, and/or right to statutory and actual damages.

65. Plaintiff either has previously rescinded the loan greater than twenty days prior to the filing of this complaint and Defendant has taken no action to rescind the loan in contravention of its responsibilities under TILA, or, to the extent this Honorable Court may find that Plaintiff has not already rescinded the loan, Plaintiff does hereby exercise her right to rescind same and this Complaint shall hereby constitute Plaintiff's Notice of Rescission pursuant to TILA, 15 U.S.C. §1601, et seq.

## COUNT II
### Real Estate Settlement Procedures Act ("RESPA")
*Garden State and Flagstar*

66. Defendants' violated RESPA, 12 U.S.C. §2607(a) & (b), and Regulation X, by:

    a. receiving payment from DeMarco from the proceeds of the Flagstar loan pursuant to an agreement between DeMarco and Defendants for the purpose of referring settlement business culminating in the instant closing;

    b. splitting the aforesaid unearned, non-incurred and non-customary, pre-paid finance charges derived from the Flagstar loan paid by Flagstar and disbursed by Garden State to Garden State, Flagstar and DeMarco;

     c.     splitting payment from Flagstar to DeMarco despite DeMarco not providing reasonably related goods and services of equivocal value and, in fact, DeMarco providing no goods or services of any value; and

     d.     Defendants requiring Plaintiff's use of Garden State for the closing.

**COUNT III**
**New Jersey Consumer Fraud Act (CFA)**
*All Defendants except as to Garden State*

67.     For the reasons aforesaid, Defendants are in violation New Jersey Consumer Fraud Act, N.J. Stat. §56:8-1, et seq. ("NJCFA").

**COUNT IV**
**Credit Repair Organization Act (CROA)**
*DeMarco*

68.     At all times material, Plaintiff was a "consumer" as defined by 15 U.S.C & §1679(a)(1).

69.     At all times material, Defendant was a "credit repair organization" as defined by 15 U.S.C §1679(a)(3).

70.     For the reasons aforesaid, at all times material Defendant was in violation of 15 U.S.C §1679, et seq.

     **VI.**     **Prayer for Relief**

**WHEREFORE**, Plaintiff requests this Honorable Court enter judgment in her favor and against Defendants, individually, jointly and/or severally, in an amount in excess of seventy-five thousand dollars ($75,000), plus such other and further relief as this Honorable Court deems necessary and just, and to Order the following relief:

     a.  Termination of any security interest in Plaintiff's property which may have been created under the loan;
     b.  Return of any money or property given by Plaintiff to anyone, including Defendants, in connection with the transaction;
     c.  Statutory damages;

    d. Forfeiture and return of loan proceeds;
    e. Damages, including;
        i. Actual damages;
        ii. Treble damages;
        iii. Attorneys fees and expenses, and costs of suit; and
        iv. Punitive Damages.

                          WEISBERG LAW, P.C.

                          /s/ Matthew B. Weisberg
                          MATTHEW B. WEISBERG, ESQUIRE
                          Attorney for Plaintiff