REED SMITH LLP
*Formed in the State of Delaware*
Diane A. Bettino, Esq.
Ryan L. DiClemente, Esq.
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, N.J. 08540
Tel. (609) 987-0050
Attorneys for Defendant, Flagstar Bank, FSB

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY –CAMDEN VICINAGE

-------------------------------------------X

| | |
|---|---|
| JERI RIZZO, : | |
| : | Civil   Action   No.   1:09-cv-1453 |
| Plaintiff, : | (RMB) (JS) |
| : | |
| v. : | |
| : | |
| DEMARCO REI, INC., LORI : | |
| PALKA, J.P. MORGAN CHASE & : | |
| CO. D/B/A CHASE, GARDEN : | |
| STATE LAND TITLE, LLC, : | |
| FLAGSTAR BANK, FSB and : | |
| JOHN DOES 1-10, : | |
| : | |
| Defendants. : | |
| : | |

-------------------------------------------X

# DEFENDANT FLAGSTAR BANK, FSB'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

# Table of Contents

**Page**

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   LEGAL ARGUMENT............................................................................... 2

    A.    Plaintiff's Opposition Misstates the Motion To Dismiss
Standard ...................................................................................... 2

    B.    Plaintiff Remains Unable To Allege Any Facts That Could
Establish The Requisite Standing To Pursue Her TILA and
HOEPA Claims Against Flagstar ....................................................... 4

        1.    New Jersey's "equitable mortgage" doctrine does not
provide Plaintiff with the necessary standing to maintain
her TILA or HOEPA claim against Flagstar............................. 4

        2.    State law concepts such as the "equitable mortgage"
doctrine................................................................................ 10

        3.    Using New Jersey's "equitable mortgage" doctrine to
establish standing under TILA and HOEPA under the
circumstances presented in this case would also have far
reaching public policy implications ........................................ 12

    C.    Plaintiff's TILA and HOEPA damage claims are barred by the
statute of limitations and cannot be saved by Plaintiff's
unsupported claim of equitable tolling................................................. 3

III.  CONCLUSION........................................................................................ 15

## Table of Authorities

**Page**

**Cases**

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009)....................................................................... 3, 4

Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 562 (2007) ..................................................................... 3

Bernstein v. New Beginnings Tr., LLC,
988 So. 2d 90 (Fla. Dist. Ct. App. 4th 2008)....................................... 9

Clemens v. Home Savers, LLC, 2007 U.S. Dist. LEXIS 70410 (E.D. Va. Sept. 21,
2007)................................................................................................... 9

Conley v. Gibson,
355 U.S. 41 (1957)............................................................................. 3, 4

Essex Property Services, Inc. v. Wood,
246 N.J. Super. 487 (Law Div. 1991)................................................. 6

Fowler v. UPMC Shadyside,
578 F.3d 203 (3rd Cir. 2009) .............................................................. 4

In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg.
Loan Litig.,
418 F.3d 277 (3rd Cir. 2005) ............................................................. 12

In re O'Brien,
423 B.R. 483 (D.N.J. 2010)............................................................... 7, 8

J.W. Pierson Co. v. Freeman,
113 N.J. Eq. 268 (E. & A. 1933) ....................................................... 6, 7

Jackson v. Ayuda Funding Corp.,
(E.D.Pa. 08-2096) .............................................................................. 9

Johnson v. Novastar,
(D.N.J. 09-cv-01799)................................................................... passim

Kemezis v. Matthew,

No. 07-5086, 2008 U.S. Dist. LEXIS 47330 (E.D. Pa. June 16, 2008) .............. 14

Miller v. New Jersey Dep't of Corrections,
    145 F.3d 616 (3rd Cir. 1998) ....................................................................... 14

Moore v. Cycon Enters.,
    2007 U.S. Dist. LEXIS 9423 (W.D. Mich Feb. 9, 2007) ..................................... 9

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,
    998 F. 2d 1192 (3rd Cir. 1993), cert. denied, 510 U.S. 1042 (1994) ................... 7

Perry v. Queen, 2006 U.S. Dist. LEXIS 17120 (M.D. Tenn. Feb. 27, 2006)........... 8

Rutherford Nat. Bank, v. H.R. Bogle & Co., et al.,
    114 N.J. Eq. 571 (Ch. Div. 1933) ....................................................................... 6

Smith v. EquiCredit Corp.,
    2002 WL 32349873 (E.D. Pa. Oct. 4, 2002) ....................................................... 14

Solar v. Millenium Fin., Inc.,
    2002 WL 1019047 (E.D. Pa. 2002) ..................................................................... 14

U.S. v. Midgley,
    142 F.3d 174 (3rd Cir. 1998)....................................................................... 14, 15

Weiner v. Bank of King of Prussia,
    358 F. Supp. 684 (E.D. Pa. 1973)........................................................................ 5

**Statutes**

12 C.F.R. 226.2 .................................................................................................. 11

12 C.F.R. 226.2(a)(17)(i)(B) ............................................................................... 11

12 U.S.C. § 2601 et seq. ....................................................................................... 1

15 U.S.C. § 1601 et seq. ............................................................................... passim

15 U.S.C. § 1639 .......................................................................................... passim

15 U.S.C. § 6801, et seq. ................................................................................... 13

15 U.S.C. 1602(f) .............................................................................................. 11

15 U.S.C. 1640 ................................................................................................... 10

N.J.S.A. 56:8-1 et seq.......................................................................................................... 1

## I.     PRELIMINARY STATEMENT

Plaintiff asserted three causes of action against Flagstar in the Second Amended Complaint for alleged violations of the Truth in Lending Act ("TILA") and Home Ownership Equity Protection Act ("HOEPA") in Count I, alleged violations of the Real Estate Procedures Settlement Act ("RESPA") in Count II and alleged violations of the Consumer Fraud Act ("CFA") in Count III.   In her Opposition, Plaintiff conceded the dismissal of the RESPA and CFA claims.  *See Opp. at p. 4.*  Plaintiff still seeks to proceed with her TILA claim against Flagstar, by arguing that she is entitled to an equitable mortgage and therefore, if there was an equitable mortgage, she would have been entitled to receive the required disclosures under TILA.  Thus, she argues, because (unbeknownst to Flagstar) she had an equitable mortgage on the property, Flagstar's failure to provide those notices violated TILA and gives her the right to rescind the mortgage loan between Flagstar and Palka.

Plaintiff, however, does not have the necessary standing to pursue a TILA claim against Flagstar.  Specifically, Plaintiff has not and cannot allege any facts that would support the existence of a business relationship between herself and Flagstar, from which the TILA disclosure obligations would flow.   Plaintiff attempts to avoid this obvious deficiency by relying on New Jersey's "equitable mortgage" doctrine to try to create a relationship where none exists.  However, the

cases Plaintiff relies upon and in which the courts determined that "equitable mortgages" could be imposed are factually distinct from this case. Those cases involved situations where a lender solicited, negotiated, or recognized the "equitable" borrower's interest in the property. No such facts exist in this case. There are no facts alleged or which could establish that Flagstar had any information or knowledge about the Plaintiff. Indeed, Plaintiff admits in her Second Amended Complaint that she never had any contact or communication with Flagstar during her transaction with Defendant DeMarco REI and its representatives. In addition, there are obvious practical impossibilities that would arise from requiring a lender, such as Flagstar, to provide credit disclosures to a non-borrower of whom it is totally unaware.

Plaintiff's TILA and HOEPA damage claims are also time-barred by the relevant one-year statute of limitations. Plaintiff cannot rely on the doctrine of equitable tolling to save her claims from dismissal because she is unable to identify any action by Flagstar to actively mislead her with respect to her claims. For these reasons, Plaintiff's remaining TILA claim in Count I of the Second Amended Complaint fails to state a valid claim for relief against Flagstar and should be dismissed as a matter of law.

## II.    LEGAL ARGUMENT

### A.    Plaintiff's Opposition Misstates the Motion To Dismiss Standard.

Despite the clear instruction of the United States Supreme Court, Plaintiff's

Opposition attempts to revive the antiquated and subsequently overruled motion to dismiss standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957). Without any support for the proposition, Plaintiff's Opposition argues that "simplistic even [sic] federal causes of action such as Section 1983 (civil rights) or garden variety negligence applies the <u>Conley</u> 'no set of facts' analysis." *Opposition at pg. 5.* However, the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, unequivocally stated that "there is no need to pile up further citations to show that <u>Conley's</u> 'no set of facts' language has been questioned, criticized, and explained away long enough....[and] [t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard." 550 U.S. 544, 562 (2007). In addition, subsequent decisions from the Supreme Court and Third Circuit have confirmed these holdings and therefore, Plaintiff's attempt to minimize her pleading obligations should be rejected.

In <u>Ashcroft v. Iqbal</u>, the Supreme Court held that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009). The Court went on to address the "plausibility" analysis and stated that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. The Third Circuit recently described the pleading standard as requiring a complaint

- 3 -

to "show" an entitlement to relief through the facts that are alleged in its complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3rd Cir. 2009).  Indeed, even in Johnson v. Novastar Mortgage, Inc., et al., the case relied upon by Plaintiff, the Court recognized that "a District Court must [] determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"   Johnson v. Novastar, (D.N.J. 09-cv-01799) (citing Fowler, 578 F.3d at 210-211).  As such, Plaintiff is unable to provide any support for her contention that this Court should revert to the obsolete "no set of facts" standard articulated in Conley.

In light of the application of the appropriate standard requiring a "showing" of facts, Plaintiff's remaining TILA claim in Count I fails to state a valid claim for relief against Flagstar.

**B.    Plaintiff Remains Unable To Allege Any Facts That Could Establish The Requisite Standing To Pursue Her TILA and HOEPA Claims Against Flagstar.**

   *1.    New Jersey's "equitable mortgage" doctrine does not provide Plaintiff with the necessary standing to maintain her TILA or HOEPA claim against Flagstar.*

Recognizing the futility of her TILA and HOEPA claims against Flagstar, Plaintiff's Opposition attempts to create an "equitable mortgage" with Flagstar as a means of side-stepping TILA and HOEPA's standing requirement.  However, this equitable doctrine is inapplicable because Plaintiff's Second Amended Complaint admits that there was no contact between Plaintiff and Flagstar during the subject

transaction and Plaintiff provides no facts that could show Flagstar's intention to create a mortgage, equitable or otherwise, with Plaintiff.  As discussed in detail below, the cases relied upon by Plaintiff are easily distinguishable and Plaintiff has not provided **any** authority which requires a lender to provide credit disclosures to an unknown and unrelated party, such as Plaintiff.

In Johnson v. Novastar Mortgage, Inc., the District Court recognized that in order to allege an injury under TILA and HOEPA a "Plaintiff must have been doing business with Defendant."  Johnson, (D.N.J. 09-cv-01799), pg. 10 (citations omitted).  Said differently, "[i]t is obvious that in order for a bank to be obligated to disclose credit terms to an individual, that individual **must be doing business with that bank**."  Weiner v. Bank of King of Prussia, 358 F. Supp. 684 (E.D. Pa. 1973)(emphasis added).  Given that Plaintiff has admitted that she had no contact, communications, or dealings with Flagstar, the question regarding Flagstar's liability to Plaintiff under TILA should end there and result in the dismissal of her Second Amended Complaint.  But, Plaintiff attempts to avoid the dismissal of her TILA claim by relying on New Jersey's "equitable mortgage" doctrine as a means of manufacturing a relationship between herself and Flagstar.  However, New Jersey's "equitable mortgage" doctrine is inapplicable to the facts alleged in Plaintiff's Second Amended Complaint and cannot save her claims from dismissal.

New Jersey's "equitable mortgage" doctrine is "founded upon that cardinal

maxim of equity which regards as done that which has been agreed to be, and ought to have been, done." Rutherford Nat. Bank, v. H.R. Bogle & Co., et al., 114 N.J. Eq. 571, 573-74 (Ch. Div. 1933). "If a deed or contract, lacking the characteristics of a common law mortgage, is used for the purpose of pledging real property, or some interest therein, as security for a debt or obligation, **and with the intention that it shall have effect as a mortgage, equity will give effect to the intention of the parties.** Such is an equitable mortgage." J.W. Pierson Co. v. Freeman, 113 N.J. Eq. 268, 270-71 (E. & A. 1933)(emphasis added); see also Essex Property Services, Inc. v. Wood, 246 N.J. Super. 487, 491 (Law Div. 1991)(recognizing that the most significant factor in determining an equitable mortgage is the intention expressed by the parties). The intention of the parties must "clearly appear from the instrument or the surrounding circumstances, at the time of entering into the same…" Id. An equitable mortgage arises from and is created by "the agreement of the parties." Id.

The facts alleged in Plaintiff's Second Amended Complaint establish that there was never an intention to create a mortgage between Flagstar and Plaintiff. For example, all of Plaintiff's contacts, communications, and correspondence regarding the alleged sale-leaseback transaction were with Defendant DeMarco REI or its representatives. *See, e.g. Second Amended Complaint* at ¶¶11-13, 16, 22, 28, 30, 33-34, 37-39, 45. Further, Plaintiff's Second Amended Complaint

admits that she never had any contact with Flagstar during the course of the transaction.  Therefore, there are simply no alleged facts that would indicate any intention by Plaintiff to enter into a mortgage transaction with Flagstar.

Flagstar's intentions are similarly transparent.  The Flagstar Mortgage at issue identifies Defendant Palka as the **only** borrower and is executed in her name **only**.[1]  *See Certification of Diane Bettino, Esq.., Ex. B., Mortgage Executed by Defendant Palka*.  There are no facts that could support a claim that Flagstar had any intention other than to provide a mortgage to Palka.  Therefore, in light of the instrument at issue and the surrounding circumstances, it is clear that Plaintiff and Flagstar never had an intention to create a mortgage and as such, the basis for an "equitable mortgage" cannot be found to exist.  See J.W. Pierson Co., 113 N.J. Eq. at 271.

The cases relied upon by Plaintiff and the additional factors identified in In re O'Brien are factually distinct and inapplicable to the facts alleged in Plaintiff's Second Amended Complaint.[2]  All of the purported "foreclosure rescue scam"

---

[1] The Mortgage signed by Defendant Palka is properly considered on a motion to dismiss because such document was referenced and relied upon in Plaintiff's Complaint.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F. 2d 1192, 1196 (3rd Cir. 1993), cert. denied, 510 U.S. 1042 (1994) (Public records, exhibits attached to the complaint, and documents referenced in the complaint may be considered by a court when considering a motion to dismiss.).

[2] The factors utilized by the Court in Johnson include:  1)  Statements by the homeowner or representations by the purchaser indicating an intention that the

Continued on following page

cases relied upon by Plaintiff involve Courts applying their equitable powers to establish a mortgage between the "equitable" owners and **persons who were involved in initiating and carrying out the sale-leaseback transactions**. For example, the Court in In re O'Brien, examined whether Defendant Cleveland and his development company, who arranged for and carried out the purported sale-lease back transaction, could be held liable to the plaintiff for failing to provide the necessary disclosures under TILA, HOEPA, or HOSA.[3]   423 B.R. at 483-90. Similarly, the Tennessee District Court in Perry v. Queen, used Tennessee's "equitable mortgage" doctrine to provide the Court with subject matter jurisdiction to hear the plaintiff's TILA claims against the defendants accused of soliciting, negotiating and carrying out the sale-leaseback transaction at issue.   2006 U.S.

---

Continued from previous page

homeowner continue ownership; 2) A substantial disparity between the value received by the homeowner and the actual value of the property; 3) Existence of an option to repurchase; 4) The homeowner's continued possession of the property; 5) The homeowner's continued duty to bear ownership responsibilities, such as paying real estate taxes or performing maintenance; 6) Disparity in bargaining power and sophistication, including the homeowner's lack of representation by counsel; 7) Evidence showing an irregular purchase process, including the fact that the property was not listed for sale or that the parties did not conduct an appraisal or investigate title; and 8) Financial distress of the homeowner, including the imminence of foreclosure and prior unsuccessful attempts. Johnson, (D.N.J. 09-cv-01799), pgs. 12-13.

[3] The "New Lender" that provided a subsequent mortgage to Cleveland was previously dismissed from the adversary proceeding and its potential liability was never addressed in the Court's decision. Therefore, the "equitable mortgage" factors articulated in In re O'Brien and used by the Court in Johnson, have no application to the situation where a borrower, such as Plaintiff, had no contact with or connection to a subsequent lender, such as Flagstar.

Dist. LEXIS 17120 (M.D. Tenn. Feb. 27, 2006).    In <u>Clemens v. Home Savers,</u> <u>LLC</u>, the District Court for the Eastern District of Virginia found that the plaintiff alleged sufficient facts to establish an equitable mortgage against Defendant Home Savers, LLC, the entity who negotiated and executed the sale-leaseback transaction.[4]  2007 U.S. Dist. LEXIS 70410 (E.D. Va. Sept. 21, 2007).  Likewise, the Courts in <u>Jackson v. Ayuda Funding Corp</u>. and <u>Bernstein v. New Beginnings</u> <u>Tr., LLC</u>, held that the "equitable mortgage" doctrine could be used to require the parties who negotiated the sale-leaseback transactions and initiated the title transfers to make the required TILA disclosures.  <u>See Jackson v. Ayuda Funding</u> <u>Corp.</u>, (E.D.Pa. 08-2096); <u>Bernstein v. New Beginnings Tr., LLC</u>, 988 So. 2d 90 (Fla. Dist. Ct. App. 4th 2008).   Therefore, the facts of these cases are easily distinguishable from the allegations contained in Plaintiff's Second Amended Complaint, which indicate that Plaintiff never had any contact, communication, or relationship with Flagstar.

Like many of cases relied on by Plaintiff, the Court's decision in <u>Johnson,</u> which permitted the plaintiff to proceed with her "equitable mortgage" claim, turned on facts which suggested that "Novastar and the other parties (including

---

[4] Plaintiff also relies on <u>Moore v. Cycon Enterprises, Inc</u>., but the Court's decision fails to provide any analysis for applying an "equitable mortgage" and holding that Defendant Cycon violated TILA.  <u>See Moore v. Cycon Enters.</u>, 2007 U.S. Dist. LEXIS 9423 (W.D. Mich Feb. 9, 2007).

Plaintiff) considered Plaintiff to still be a true owner of the home." Johnson, (D.N.J. 09-cv-01799), pg. 15. Specifically, the allegations in the Johnson Complaint indicated that the plaintiff was making the mortgage payments to Novastar directly. Id. In contrast, Plaintiff's Second Amended Complaint fails to allege any facts that indicate Flagstar considered Plaintiff to be the owner of the home and confirm that Plaintiff had no contact with Flagstar.

As such, Plaintiff remains unable to utilize New Jersey's "equitable mortgage" doctrine to manufacture the necessary standing to proceed with her TILA and HOEPA claims against Flagstar.

### 2.   *State law concepts such as the "equitable mortgage" doctrine cannot be used to expand the scope and express limitations of TILA.*

It is well accepted that federal law, not state mortgage law, governs the applicability of TILA and Regulation Z. TILA's civil liability provision makes it expressly clear that a "creditor" and only a "creditor" can be held liable under TILA. 15 U.S.C. 1640. Therefore, the definition of a "creditor" as defined by TILA, Regulation Z and its Commentary, governs the scope of Flagstar's potential liability to Plaintiff. Said differently, if an entity is not a "creditor" as defined by TILA, that entity is beyond the scope of TILA's civil liability provision.

The term "creditor" "refers **only** to a person who both (1) regularly extends…credit which is payable by agreement in more than four installments…and (2) is the person to whom the debt arising from the consumer

- 10 -

credit transaction **is initially payable on the face of the evidence of indebtedness**..." 15 U.S.C. 1602(f)(emphasis added).   Regulation Z, which is promulgated by the Federal Reserve Board and is subject to continuous notice and comment, defines "creditor" with the same limitation.   12 C.F.R. 226.2(a)(17)(i)(B).   The Commentary to Regulation Z, states the test for a "creditor" is composed of two "prerequisites", the second of which requires that "the obligation must be payable to the person in order for that person to be considered a creditor." Id.

Here, there is little doubt that Flagstar cannot be considered a "creditor" under the definitions provided by TILA with regard to the Plaintiff.   There are no alleged documents that identify Flagstar as the person to whom Plaintiff's credit transaction "is initially payable on the face of the evidence of indebtedness." See 12 C.F.R. 226.2.   In fact, Plaintiff's Second Amended Complaint admits that she did not have any contact with Plaintiff during the course of the transaction.   If Plaintiff believes that the "creditor" should also include an indirect funder of the buyer of property or the maker of an "equitable mortgage," then an amendment to TILA is necessary in order to expand the scope of TILA, Regulation Z and its Commentary.   While a court might be able to construe state law to allow an "equitable mortgage," a court cannot use this equitable doctrine to rewrite the federal TILA statutory and regulatory scheme relied on by lenders and borrowers

- 11 -

across the country.

> **3.** **Using New Jersey's "equitable mortgage" doctrine to establish standing under TILA and HOEPA under the circumstances presented in this case would also have far reaching public policy implications.**

In addition to being legally and factually unsupported, the application of Plaintiff's proposed "equitable mortgage" argument to find a TILA violation would have far-reaching public policy implications that exceed the legislative intent of TILA and HOEPA and would cause significant practical problems for lenders such as Flagstar. TILA was created as a consumer disclosure statute that was intended "to promote the informed use of credit by requiring certain uniform disclosures from creditors." In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig., 418 F.3d 277, 303 (3rd Cir. 2005). However, if this Court were to apply New Jersey's "equitable mortgage" doctrine to the case at bar, it would place lenders such as Flagstar, in an untenable situation. Specifically, the application of this equitable doctrine would require lenders to provide disclosures to non-borrowers such as Plaintiff, who may not even be known to the lender.

In addition, the practical realities of requiring Flagstar to serve TILA disclosures on a non-borrower will have other problematic results. In this case, if Plaintiff's "equitable mortgage" theory is accepted, Flagstar would be required to serve Plaintiff with the TILA disclosures for Defendant Palka's mortgage

- 12 -

transaction.   These disclosures, which may contain the personal and private information of Defendant Palka, could result in the violation of a number of privacy regulations that prohibit the dissemination of such information.  <u>See</u> e.g. Gramm Leach Bliley Act, 15 <u>U.S.C.</u> § 6801, et seq.  Requiring TILA disclosures to be served on non-borrowers, such as Plaintiff, will also lead to significant questions relating to the issue of rescission under TILA.  For example, if a non-borrower, such as Plaintiff, has a right to rescind, must he or she confer with the actual borrower in order to rescind the transaction?   In the case where an "equitable" borrower and the actual borrower disagree as to exercising their right to rescind, how would Flagstar be expected to proceed?  Would the Plaintiff be required to pay back the sums advanced by Flagstar as part of the rescission process?  These are just a few of the issues that would result from using New Jersey's "equitable mortgage" doctrine to require a lender to make TILA disclosures to a non-borrower.

**C.    Plaintiff's TILA and HOEPA damage claims are barred by the statute of limitations and cannot be saved by Plaintiff's unsupported claim of equitable tolling.**

Plaintiff's Opposition concedes that the applicable one-year statute of

limitations bars her claims for damages under TILA and HOEPA.[5]  *Opposition at*

*pgs. 9-10.*  Despite this concession, Plaintiff attempts to salvage her claims with

references to the doctrine of "equitable tolling".  *Id.*  However, Plaintiff's Second

Amended Complaint is devoid of any allegations that establish the elements

necessary for a claim of equitable tolling and therefore, Plaintiff's TILA and

HOEPA damage claims remain barred by the one-year statute of limitations.

The Third Circuit has held that "TILA's statute of limitations is subject to

equitable tolling in **certain** circumstances."  Kemezis v. Matthew, No. 07-5086,

2008 U.S. Dist. LEXIS 47330, at *11 (E.D. Pa. June 16, 2008) (emphasis added).

The court in U.S. v. Midgley laid out three situations when equitable tolling may

be appropriate:

> (1) Where the defendant has actively misled the plaintiff
> respecting the plaintiff's cause of action; (2) where the plaintiff in
> some extraordinary way has been prevented from asserting his or her
> rights; or (3) where the plaintiff has timely asserted his or her rights
> mistakenly in the wrong forum.

142 F.3d 174, 178-79 (3rd Cir. 1998).  Equitable tolling is "appropriate in order to

avoid unjust results where there has been fraudulent concealment."  Smith v.

EquiCredit Corp., 2002 WL 32349873, *3 (E.D. Pa. Oct. 4, 2002)(citing Solar v.

Millenium Fin., Inc., 2002 WL 1019047, at *2 (E.D. Pa. 2002)).  "Furthermore, to

---

[5] In its Motion to Dismiss, Flagstar did not argue that Plaintiff's rescission claim
under TILA was time-barred by three-year statute of limitations.  However, for the
reasons discussed in detail above, Flagstar contends that Plaintiff does not have the
requisite standing to maintain any claim under TILA.

meet the standard of equitable tolling, a plaintiff must demonstrate that she 'exercised reasonable diligence in investigating and bringing the claims.'" Id. (citing Miller v. New Jersey Dep't of Corrections, 145 F.3d 616, 618-19 (3rd Cir. 1998)).

Here, Plaintiff's Second Amended Complaint is devoid of any facts that could support a claim of equitable tolling.  Plaintiff fails to explain how **Flagstar** "actively misled" her with respect to her causes of action, how she was been prevented in some extraordinary way from asserting her claims, or whether she asserted her claims in the incorrect forum.  See Midgley, 142 F.3d at 178-79.  Her reference to "Defendants' fraudulent concealment of the 'sale'" fails to explain how **Flagstar** actively misled her and is simply another baseless attempt to lump Flagstar in with the other Defendants.  As such, Plaintiff is unable to allege a valid basis for equitable tolling and her TILA and HOEPA damage claims remain barred by the one-year statute of limitations.

## III.   CONCLUSION

Based upon the foregoing case law and legal analysis, it is respectfully requested that this Court dismiss the Second Amended Complaint with prejudice.

**REED SMITH LLP**

s/Diane A. Bettino
Diane A. Bettino

Dated:  June 28, 2010

- 15 -